Kenneth Armstrong and Angelina Armstrong, et al. [1] v. Commissioner. Armstrong v. Commissioner
Docket Nos. 93805, 93806, 93857.
United States Tax Court
T.C. Memo 1963-232; 1963 Tax Ct. Memo LEXIS 114; 22 T.C.M. (CCH) 1179; T.C.M. (RIA) 63232; August 28, 1963
Spurgeon Avakian and Jerry Phelan, First Western Bldg., Oakland, Calif., for the petitioners, Claude R. Wilson, Jr., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined deficiencies in income tax against the petitioners as follows: Docket
Defi-
No.
Petitioner
Year
ciency
93805
Kenneth Armstrong and
Angelina Armstrong
1957
$2,641.81
1958
3,283.38
1959
3,915.23
93806
Peter Rubman and Lucy
Rubman
1957
1,570.11
1958
1,672.64
1959
2,169.85
93857
Kenneth M. Dotson and
Jean Dotson
1958
430.42
1959
721.53
*115 The only issue for decision is whether certain expenses of the petitioners for meals and lodging were incurred while away from home in the pursuit of their trade or business within the meaning of section 162(a)(2) of the Internal Revenue Code of 1954, and are therefore deductible from gross income. Findings of Fact Some of the facts have been stipulated and are found as stipulated. Petitioners Kenneth Armstrong (hereinafter sometimes called Armstrong) and Angelina Armstrong are husband and wife, and filed joint income tax returns for the calendar years 1957 and 1958 with the district director of internal revenue at Newark, New Jersey, and for the calendar year 1959 with the district director at Reno, Nevada. Petitioners Peter Rubman (hereinafter called Rubman) and Lucy Rubman are husband and wife, and filed joint income tax returns for the calendar years 1957 and 1958 with the district director of internal revenue at Newark, New Jersey, and for the calendar year 1959 with the district director at Reno, Nevada. Armstrong and Rubman are Canadian citizens. Petitioners Kenneth M. Dotson (hereinafter called Dotson) and Jean Dotson are husband and wife, *116 and filed joint income tax returns for the calendar years 1958 and 1959 with the district director of internal revenue at Reno, Nevada. The Armstrongs had no children during the taxable years and insofar as appears neither did the Rubmans or the Dotsons. On none of their returns for the years herein was there any claim of exemption for a child. During the years 1957, 1958 and 1959, Kenneth Armstrong, Angelina Armstrong and Rubman were partners in a professional entertainment group known as the "Jo Ann Jordan Trio" (hereinafter called the Trio). The Trio's performances featured comedy, music and dancing. Dotson, during the years 1958 and 1959, was a professional entertainer. He joined the Trio on September 4, 1958, as an employee. The Trio was organized in Montreal, Canada, in 1951, and came to the United States in the same year. It first performed in Nevada in December 1955, at the Mapes Hotel in Reno. During the fourteen-month period from December 1955 through January 1957, it performed in Reno for twelve months. The Armstrongs and Rubman performed with the Trio during 1957, 1958 and 1959 as follows: Year
From
To
Place
1957
Jan. 1
Feb. 5
Mapes Hotel, Reno, Nevada
Feb. 13
Mar. 12
Riviera Hotel, Las Vegas, Mexico
Mar. 20
Apr. 2
Casa Linda, Phoenix, Arizona
Apr. 12
Apr. 25
Taylor's Club, Denver, Colorado
Apr. 29
May 11
B & B Club, Indianapolis, Indiana
May 13
May 25
Yeaman's, Detroit, Michigan
May 27
June 1
Commodore, Windsor, Ontario, Canada
July 3
Sept. 2
North Shore Club, Lake Tahoe, Nevada
Sept. 4
Oct. 28
Royal Nevada, Las Vegas, Nevada
Nov. 5
Dec. 30
Mapes Hotel, Reno, Nevada
1958
Jan. 1
Feb. 2
Mapes Hotel, Reno, Nevada
Feb. 6
Feb. 19
Taylor's Club, Denver, Colorado
Feb. 27
Mar. 19
Flamingo, Las Vegas, Nevada
Apr. 8
May 11
Mapes Hotel, Reno, Nevada
May 12
June 22
Wagon Wheel, Lake Tahoe, Nevada
July 3
Sept. 3
North Shore Club, Lake Tahoe, Nevada
Sept. 4
Sept. 18
Wagon Wheel, Lake Tahoe, Nevada
Sept. 22
Oct. 22
Taylor's Club, Denver, Colorado
Oct. 27
Dec. 31
Commercial Hotel, Elko, Nevada
1959
Jan. 1
Jan. 25
Commercial Hotel, Elko, Nevada
Jan. 29
May 20
Riverside Hotel, Reno, Nevada
May 26
June 7
Bahama Inn, Pasadena, California
June 15
Sept. 8
Wagon Wheel, Lake Tahoe, Nevada
Sept. 17
Dec. 30
Commercial Hotel, Elko, Nevada
*117 Dotson performed with the Trio during all of the above engagements from September 4, 1958, through the end of 1959. Beginning at the time when the Trio came to the United States in 1951, the Armstrongs used as a mailing address for business purposes the New York City residence of a sister of Angelina Armstrong. They communicated with the sister regularly, but except for an occasional visit they never stayed at her residence. In 1956 the sister moved from New York City and thereafter the Armstrongs used the address of the sister's son, 76 Harcourt Avenue, Bergenfield, New Jersey. Except for a three-week visit in June 1957, the Armstrongs did not, during the taxable years, stay at the Bergenfield address. On their 1957 and 1958 income tax returns, the Armstrongs listed "76 Harcourt Avenue, Bergenfield, New Jersey," as their home address, and claimed deductions for expenses incurred for meals and lodging while away from that address in pursuit of their business. On their 1959 return, they listed their home address as "1600 So. Arlington Avenue, Reno, Nevada," but claimed deductions for expenses incurred for meals and lodging while away from the New Jersey address in pursuit of their *118 business, including amounts so incurred while in Reno. The Armstrongs had moved to the Arlington Avenue address in 1960, prior to the filing of their 1959 return. When the Armstrongs had engagements in Reno during the taxable years, it was their practice to rent and occupy an apartment at the Casson Apartments, 700 Forest Street. The Casson Apartments were furnished apartments. They first stopped at the Casson in 1956. They had no continuing arrangement at the Casson when they were away from Reno, but when they did have engagements in Reno, they tried to rent the same suite. If it was occupied they would take a different one. When they were in Reno for only one or two nights they did not always stay at the Casson. When filling engagements at places other than Reno, they did at times leave one or more items, as for instance a suitcase and a trombone, in the storage room at the Casson. On his 1957 and 1958 income tax returns, Rubman listed "9 Povershon Road, Nutley, New Jersey," as his home address, and claimed deductions for expenses incurred for meals and lodging while away from that address in pursuit of his business. The address was the residence of a sister of Lucy Rubman. The *119 Rubmans stayed there only on infrequent visits, the last one during the taxable years being in June 1957, when they stayed about three weeks. On his 1959 return, he listed his home address as "790 Shangri-La Drive, Reno, Nevada," but claimed deductions for expenses incurred for meals and lodging while away from the New Jersey address in pursuit of his business, including amounts so incurred while in Reno. The Rubmans had moved to the Shangri-La Drive address in 1960, prior to the filing of their 1959 return. Beginning in December 1955, and during the taxable years involved, the Rubmans also rented and occupied an apartment at the Casson Apartments while the Trio was performing in Reno. On every occasion except one, they occupied the same suite. On one or more occasions, when they were away from Reno, they stored a bagful of clothing in a storage room at the Casson. They did not rent or maintain any place of abode or residence in Reno when the Trio had engagements elsewhere. When the Trio was performing in cities other than Reno, the Armstrongs and the Rubmans rented housekeeping apartments if they were available. Otherwise, they stayed in hotels. The Armstrongs stayed at the *120 following hotels or motels on the following dates, and stated their address upon registering as indicated: Address shown upon
Date
Hotel or Motel
Registering
Jan. 28, 1957
Bellevue Hotel,
Reno, Nevada
San Francisco, California
Feb. 20-22, 1958
The Mapes, Reno, Nevada
Bergenfield, New Jersey
June 26-28, 1958
Saharan Hotel,
Bergenfield, New Jersey
Hollywood, California
Aug. 18-19, 1958
The Mapes, Reno, Nevada
Lake Tahoe, Nevada
Sept. 20, 1958
Hotel Utah & Motor Lodge,
Bergenfield, New Jersey
Salt Lake City, Utah
Oct. 25, 1958
Hotel Utah,
76 Harcourt,
Salt Lake City, Utah
Bergenfield, New Jersey
May 22-25, 1959
Riviera Hotel,
700 Forest St.,
Las Vegas, Nevada
Reno, Nevada
June 8-11, 1959
Sands-Sunset Hotel,
Reno, Nevada
Hollywood, California
July 6, 1959
Mirador Hotel,
Tamarack St.,
Reno, Nevada
Stateline, California
July 20-21, 1959
Riverside Hotel,
Stateline, California
Reno, Nevada
Aug. 4-5, 1959
Riverside Hotel,
Stateline, California
Reno, Nevada
Aug. 19-20, 1959
Riverside Hotel,
Stateline, California
Reno, Nevada
Sept. 2, 1959
El Centro Motel,
Stateline, California
Reno, Nevada
Sept. 10-11, 1959
El Centro Motel,
Stateline, California
Reno, Nevada
Sept. 13-15, 1959
St. Francis Hotel,
Reno, Nevada
San Francisco, California
*121 The Rubmans stayed at the following places of lodging on the following dates, and stated their address upon registering as indicated: Address shown upon
Date
Place of Lodging
Registering
Feb. 21-22, 1958
Caravan Motel,
Nutley, New Jersey
Reno, Nevada
July 1-Sept. 3, 1958
Cabin rented from North
9 Povershon Road
Tahoe Rental Agency
Nutley, New Jersey
In June 1957, while on a vacation trip to New York or New Jersey, the Armstrongs decided that they wanted to live in Reno, and near the end of the year began looking for a house that might be bought. At an undisclosed later date they decided to build rather than buy a house, and sometime in April 1959, [2] they purchased a lot in Reno. The lot was either purchased jointly with the Rubmans, or an interest was later sold to them. Construction of a duplex house on the lot was begun in 1959, one unit of which was to belong to the Armstrongs and one to the Rubmans. The duplex was completed in January of 1960, and the Armstrongs moved into their unit the same month. *122 At approximately the same time as the Armstrongs, the Rubmans had also decided to acquire a house in Reno. Early in 1959, they made a deposit on a house but did not thereafter complete the purchase. As did the Armstrongs, the Rubmans moved into their unit of the duplex after it was completed early in 1960. The duplex was on a corner lot, with the Armstrongs' portion facing South Arlington Avenue and the Rubmans' portion facing Shangri-La Drive. Armstrong's parents moved to Reno from Montreal, Canada, in August 1958. On a prior visit by them to Reno, Armstrong, who was their only child, told them that he wanted them to move to Reno, because he and his wife would not thereafter be traveling East very often. Armstrong's parents had owned a home in Montreal, which they sold. When they arrived in Reno they moved into a two-bedroom suite at the Casson Apartments. The Trio was performing at Lake Tahoe at the time, and did not perform in Reno again until January 29, 1959. When the Armstrongs performed in Reno from January 29, 1959, to May 20, 1959, they lived in the suite with Armstrong's parents. Armstrong paid the rent for the suite during the entire time his parents lived at the Casson *123 Apartments. Before his parents moved to Reno, Armstrong did not rent an apartment at the Casson Apartments or any other place of abode in Reno except when he was playing there. Neither of Armstrong's parents were employed while they were living in Reno in 1958, but both were employed in 1959. In October 1959, or prior thereto, Armstrong's parents moved from the Casson Apartments to a one-bedroom suite in a different apartment. [3] Armstrong paid the rent for that apartment. From the time the parents moved into the one-bedroom apartment until the end of 1959, the Trio did not perform in Reno. On six different occasions in July, August and September 1959, the Armstrongs made visits of one and two days to Reno and on those occasions did not stay at the apartment with Armstrong's parents, but at a hotel or motel. When the Armstrongs moved into the duplex in January 1960, the parents moved in with them. In addition to his residence, Armstrong owns or has an interest in other real property in Reno consisting of two duplex houses and a lot, all of which *124 were purchased or constructed in 1959 or 1960. During the taxable years he did not own any real property elsewhere. During the taxable years Armstrong and Rubman maintained memberships in the American Federation of Musicians in Montreal, Canada. Under the union rules, one of the conditions for transferring from one local union to another was that for the first three months the member so transferring could not take any steady engagement. [4] Armstrong performed in various cities as a traveling member, under which status he was required to pay the local union in the particular area a "traveling tax" equal to ten percent of the union scale of that local union. Rubman obtained a traveling membership certificate from Local No. 104 in Salt Lake City, Utah, for a three-month period beginning on November 3, 1958, and for another three-month period beginning on May 26, 1959. *125 Dotson went to Reno in October 1957, to seek employment. Prior to that time he had lived in Ventura, California. He complied with the requirements for membership in the Reno local of the American Federation of Musicians, and was admitted to membership in January 1958. Thereafter, and until about the end of June 1958, he performed with various groups in Reno. He then performed with a group at Oliver's Club in Lake Tahoe, Nevada, before joining the Trio on September 4, 1958. He lived at 2795 East Fourth Street in Reno from October 1957 until June 1958, and again for a two-week period at a later time. Subsequently he stayed at the Casson Apartments while performing in Reno. During 1958 and 1959 Dotson did not own a house in Reno, and did not rent or maintain any residence or place of abode in Reno when he was not performing there. The address shown on the Dotsons' 1958 and 1959 income tax returns was "c/o Casson Apts., 700 Forest St., Reno, Nevada." Dotson obtained an amateur radio operator's license from the Federal Communications Commission, with an effective date of April 17, 1958, which listed his address as "2975 East Fourth Street, Reno, Nevada." During 1958 and 1959 he had *126 an automobile, which was registered in Nevada. The Trio filed a partnership return for the calendar year 1957 showing "76 Harcourt Avenue, Bergenfield, New Jersey," as the address of the partnership. The Trio filed a partnership return for the calendar year 1959 showing "1600 So. Arlington Ave., Reno, Nevada," as the address of the partnership, and showing Washoe, the county in which Reno is located, as the county in which the business was located. [5] These partnership returns and all of the petitioners' individual returns for the respective taxable years were prepared by an accountant in Reno. On their 1957, 1958 and 1959 income tax returns, the Armstrongs claimed deductions as expenses incurred for meals and lodging as follows: Year
Meals
Lodging
1957
$4,312.00
$2,146.12
1958
4,312.00
2,460.62
1959
4,060.00
2,468.23 The amounts deducted represented expenses claimed to have been incurred by the Armstrongs while away from their New Jersey address in pursuit of their business, and included expenses incurred while they were in Reno. *127 In his determination of deficiencies, the respondent disallowed all of the deductions so claimed, on the ground that, in the absence of an established home, the expenses were not incurred while the Armstrongs were away from home. The expenses incurred by the Armstrongs for meals and lodging while away from Reno in pursuit of their business were as follows: 1957
$4,253
1958
5,344
1959
4,346
On his 1957, 1958 and 1959 returns, Rubman claimed deductions as expenses incurred for meals and lodging as follows: Year
Meals
Lodging
1957
$2,205.00
$2,110.00
1958
2,156.00
2,016.25
1959
2,030.00
2,427.45 The amounts deducted represented expenses claimed to have been incurred by Rubman while away from his New Jersey address in pursuit of his business, and included expenses incurred while he was in Reno. In his determination of deficiencies, the respondent disallowed all of the deductions so claimed. The expenses incurred by Rubman for meals and lodging while away from Reno in pursuit of his business were as follows: 1957
$2,843
1958
3,293
1959
2,968
On his 1958 and 1959 returns, Dotson deducted expenses for meals and *128 lodging as follows: Year
Meals
Lodging
1958
$1,015
$1,015
1959
1,020
1,450 The amounts deducted represented expenses incurred by Dotson while away from Reno in pursuit of his business. The amounts deducted for 1958 included expenses incurred by Dotson before he joined the Trio on September 4. In his determination of deficiencies, the respondent disallowed all of the deductions so claimed. During the respective taxable years, the Armstrongs, Rubman and Dotson lived, and had their respective places of residences and abode, wherever they were performing at the particular time, and not elsewhere. Opinion In section 162(a)(2) of the Internal Revenue Code of 1954, it is provided that "traveling expenses (including the entire amount expensed for meals and lodging) while away from home in the pursuit of a trade or business" shall be allowed as a deduction. In section 262 of the Code, it is provided that "except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses." The petitioners contend that under section 162(a)(2), the home of each in all of the taxable years was *129 Reno, Nevada, and that they are entitled to deduct the amounts paid by them for meals and lodging while away from Reno in pursuit of their trade or business. For all taxable years, the Armstrongs and the Rubmans, in their returns, used Bergenfield, New Jersey, and Nutley, New Jersey, respectively, as their homes, in computing the deductions claimed for expenses incurred for meals and lodging while away from home on business, and this even though on their 1959 returns they listed as their home addresses Reno, Nevada. Claiming Reno as their homes for all taxable years, as they now do, they do not contest the disallowance of that part of the claimed deductions which represented expenses incurred in Reno for meals and lodging. The respondent contends that during the taxable years the petitioners while away from Reno in the pursuit of their trade or business, were not away from home within the meaning of section 162(a)(2). The facts show that the petitioners lived and had their respective places of residence and abode wherever they were performing at a particular time, and not elsewhere. When they were performing away from Reno they had no place of residence or abode in Reno. James v. United States, 308 F. 2d 204, *130 is in point. There the taxpayer was a traveling salesman, who, in support of claimed deductions for traveling expenses, claimed Reno, Nevada, as his home. He did have some accounts in Reno and in serving those accounts spent some part of each year there. He had no regular or permanent residence or place of abode in Reno, but while there stopped at a hotel, renting and occupying a room only for the duration of his visit. Finding that the taxpayer had failed to show that he had or maintained a home in Reno, and finding also that his home was wherever he happened to be, the United States District Court for Nevada, at 176 F. Supp. 270, decided that the Commissioner had properly disallowed the claimed deductions. Noting the findings and conclusions of the court below, the United States Court of Appeals for the Ninth Circuit affirmed. To the same effect, is the case of Wilson John Fisher, 23 T.C. 218, affd. 230 F. 2d 79. Fisher was a professional musician and filled limited engagements in various cities in Wisconsin and Minnesota, as did petitioners in Nevada and other states. He and his family lived wherever he happened to be working. They maintained *131 no residence or place of abode elsewhere. Fisher used the apartment of his mother-in-law in Milwaukee as a mailing address and paid part of the telephone bill there. But on the two occasions when he was employed in Milwaukee, he and his family did not reside with his mother-in-law. It was held that Fisher while away from Milwaukee in the course of his employment, was not away from home within the meaning of the statute. As supporting his claims for 1958 and 1959, Armstrong stresses the fact that during the latter part of 1958 and for all of 1959 he paid the rent on the apartments occupied by his parents in Reno; that the apartment first so occupied was a two-bedroom apartment and that during an engagement in Reno in 1959, ending May 20, he and his wife occupied one of the bedrooms in the apartment so rented. Armstrong's parents had sold their home in Montreal and moved to Reno at his behest, and he rented and paid the rent on the apartment for them. The Armstrongs did occupy one of the bedrooms during their Reno engagement in 1959, but after their engagement was concluded, it being known that they would not be performing in Reno again for some considerable time, the parents gave *132 up the two-bedroom apartment for one with only one bedroom. It is to be noted also that on six different occasions in July, August and September 1959, the Armstrongs made visits of one to two days in Reno, but that on none of those visits did they stay with the parents, even though on the dates of two of the visits and possibly all six the parents were still occupying the two-bedroom apartment at the Casson, if Armstrong's testimony as to the date of the move to the one-bedroom apartment is correct. We are satisfied, from the evidence, that the apartments in question were rented by Armstrong as a home for his parents. They were not rented and maintained as his home, except for the period of his engagement in Reno. Both Armstrong and Rubman stress the fact that in 1959 they acquired a lot in Reno and in the latter part of the year were constructing a duplex in which they expected to live and into which they did move after it was completed in 1960. With respect to the duplex, we regard it as sufficient to note that it was not completed until 1960 and did not constitute the residence or home of any one in 1959. The respondent's disallowance of the deductions claimed by the petitioners *133 as expenses incurred for meals and lodging while away from home in the pursuit of their business is sustained. In the Armstrong and Rubman cases, Rule 50 computations will be necessary, by reason of stipulations covering automobile expenses. In the Dotson case there was no automobile expense issue. Decisions in Docket Nos. 93805 and 93806 will be entered under Rule 50. Decision in Docket No. 93857 will be entered for the respondent. Footnotes
1. The proceedings of the following petitioners are considered herewith: Peter Rubman and Lucy Rubman, Docket No. 93806, and Kenneth M. Dotson and Jean Dotson, Docket No. 93857.↩
2. On direct examination, Armstrong testified the lot was purchased in April, but on cross-examination, it was his testimony that it must have been toward the end of 1959.↩
3. It was Armstrong's testimony that the move into the one-bedroom apartment was "around August or September or October of '59."↩
4. The exact nature of this restriction is not clear from the record.armstrong testified that a union member would be "allowed to work club dates" during the period, but no explanation was made of the term "club dates." In other parts of his testimony, the engagements under which the Trio did perform were in one or more instances referred to as club engagements. Dotson, who did transfer his union membership, testified that for the initial threemonths period he was not allowed to work more than three days per week.↩
5. No 1958 partnership return was introduced into evidence, although Armstrong testified that the Trio filed one.↩