**Robert ROSENSPAN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 69–C–174.**

United States District Court,
E. D. New York.

March 25, 1970.

Paul, Weiss, Goldberg, Rifkind, Wharton & Garrison, New York City, for plaintiff; James B. Lewis, New York City, of counsel.

Edward R. Neaher, U. S. Atty., E. D. New York, for defendant; Johnnie M. Walters, Asst. Atty. Gen., of counsel.

ROSLING, District Judge.

Plaintiff, Rosenspan, a traveling salesman, seeks refund of federal income tax and accrued interest allegedly overpaid by him for the years 1962 and 1964. For 1962 the excess was $1,209.86, and for 1964, $795.81. These sums were deducted by him on his returns as expenditures for food and lodging while in the sales territory assigned to him by his employers. He was then, so he contends, "away from home" within the meaning of Section 162(a) (2) of the Internal Revenue Code of 1954, ("IRC"). That provision as in effect for 1962 reads in pertinent part:

"SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

\*   \*   \*   \*   \*   \*

(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; \* \* \* "

As amended in a respect not here pertinent the provision applicable to 1964 reads:

"(a) In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

\*   \*   \*   \*   \*   \*

(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; \* \* \* "

Upon disallowance of the deduction plaintiff paid the tax, and now brings action for its recovery.

The facts have been stipulated. They are as follows:

Plaintiff's employers were jewelry manufacturers with headquarters in New York City. He worked in these offices five or six times a year for a total of 30 days. During the remainder of the year he traveled extensively within his assigned territory, calling upon retail jewelry stores in Ohio, Indiana, Michigan, West Virginia, Kentucky and western Pennsylvania. He traveled by auto-

mobile, stopping at motels or hotels, and usually spent not more than one or two nights in each city. Sometimes he used a convenient major city within his territory as a point from which to operate for a few days while visiting customers in nearby towns. He spent no substantial portion of the year in any one city in his territory and had no business post or station or permanent place of residence within the sales territory.

The plaintiff was a widower with adult married children who had established their own separate households. He himself had grown up in Brooklyn and while his wife was alive had maintained his family home there. From 1948 through the taxable years involved plaintiff used his brother's residence in Brooklyn as his "personal residential address." He kept some of his clothing and other personal belongings in his brother's home and registered and voted from his address. His tax returns were filed from the address and he received his personal mail there. "Out of a desire not to abuse his welcome at his brother's home, he stayed more often at the Crossway Idlewild Inn near New York City's John F. Kennedy Airport."

His bank was in New York City, and, he had been a member of a branch of the Workmen's Circle, namely Branch No. 1001, in New York City for many years. When in the city he attended meetings and functions of the branch in New York. He generally spent his annual vacations in Brooklyn where his children resided "and made an effort to return to Brooklyn whenever possible."

He supplied his employers with itineraries covering periods of two weeks or more, and the employer would forward business mail to him as he traveled. Checks for his drawings and commissions were deposited by the employer by mail in plaintiff's New York City bank account.

His business card carried the name and address of his employer in the city and as an accommodation to him by a Cincinnati customer, the address of such customer. He received some business mail from others than his employer at either his employer's address in New York, at his customer in Cincinnati, or at the home of a cousin in the latter city.

His automobile operator's licenses in 1962 and 1964 were issued by both Ohio and New York. His ownership license had prior to October 1961, been issued by the State of New York. On that date and thereafter through December 31, 1964, he registered his automobile with the State of Ohio in order to be able to maintain insurance coverage in that state at a rate lower than it was obtainable in New York.

He had on his 1962 and 1964 returns deducted his expenses for transportation [to and from his sales territory] and for food and lodging while in the territory. The transportation had on audit been allowed; the food and lodging, disallowed.

The taxpayer's brief and reply brief overwhelm the Court with the number of cases cited in a comparatively simple situation where no case offered is squarely in point. The broad principles applicable are, however, fairly clear and the issue in this case, as it does in those cited, turns on the particular facts established.[1]

The rule is that the taxpayer's "home" for the purpose of the deduction under section 162(a) (2) is the business address of his employer. But the business address is used in the sense of a "basing point" for determination whether the taxpayer claiming the deduction is away from it when he incurs his expenses for transportation, food and lodging, rather than as a home where he eats, and sleeps, when he is not traveling. If, for example, he lives with his wife in Philadelphia, and sells in New York City where his employer is located, he is not "away from home" when he sells, for he is not then selling away from his basing point. The situation postulated, however, does not now concern us for the place of the

1. Commissioner v. Flowers, 326 U.S. 465, 470, 66 S.Ct. 250, 252, 90 L.Ed. 203 (1946) and cases cited therein.

employer's business and the residence of plaintiff's brother which he proposes as his home are both in the City of New York, while the sales territory is located in other states.[2]

Plaintiff's difficulty is, rather, that the Internal Revenue Service does not recognize that his brother's home is plaintiff's home at all. He does not duplicate his living expenses while he is on the road away such residence, for he makes no claim that he pays any part of the expenses for its maintenance or his board and keep there. It is the government's position that if one is to be allowed the deduction for expenses while "away from home" he must fall in the class for which the IRS says the law was passed, namely, those who have homes with attendant and continuing expense while they travel and incur obligations for food and lodging on the road. As pointed out by the government, the deduction was originally permitted only for the excess above the taxpayer's simultaneous expenses at home, but when this provision was found too difficult and expensive for the Service to administer, it was converted by Congress at the request of IRS into a deduction for the full amount of meals and lodging purchased by the taxpayer while traveling on the employer's business.[3]

The courts have recognized that the present provision does not equitably accommodate every situation, allowing some taxpayers greater, and others lesser, deductions than they might upon an exact calculation be held entitled to.[4] The inadequacies and unfairness of the deduction, though noted by the Court, are for the Congress and the Commissioner, and not for the Court to correct. These inadequacies reflect a congressional effort to eliminate an impossibly burdensome record-keeping requirement imposed on the taxpayer, claiming the deduction, coupled with the formidable administrative problem cast upon the Service as it sought to achieve exactitude in ruling on the propriety of the deduction.[5]

2.  In Cockrell v. Commissioner, 321 F.2d 504, 507 (8th Cir. 1963), the court of appeals in its opinion declared the rule as follows:

> "The word 'home' as used in that section is to be given its ordinary meaning. In a tax sense it is referable to the place where one has his principal place of duty, and where he has an abode while pursuing such duty;—not where he merely claims his 'residence' to be. (Wright v. Hartsell, 305 F.2d 221 (9 Cir. 1962), and cases therein cited.) Ney v. United States, 171 F.2d 449 (8 Cir. 1948), cert. den. 336 U.S. 967, 69 S.Ct. 940, 93 L.Ed. 1119; Bercaw v. Commissioner, 165 F.2d 521 (4 Cir. 1948); Barnhill v. Commissioner, 148 F.2d 913, 159 A.L.R. 1210 (4 Cir. 1945). 'The job, not the taxpayer's pattern of living,' is the crucial matter. Carragan v. Commissioner, 197 F.2d 246, 249 (2 Cir. 1952); O'Toole v. Commissioner, 243 F.2d 302, 303 (2 Cir. 1957)."

Cf. Wills v. Commissioner, 411 F.2d 537, 540 (9th Cir. 1969); Raymond E. Kershner, 14 T.C. 168 (1950).

3.  See Revenue Act of 1918, ch. 18, § 214 (a), 40 Stat. 1066; Treas.Reg. 45, § 214 (a), amended, T.D. 3101, 3 Cum.Bull. 191 (1920); Act of Nov. 23, 1921, ch. 136, § 214(a) (1), 42 Stat. 239, which became part of the Revenue Act of 1921 and furnishes the forerunner of the present provision.

4.  Commissioner v. Stidger, 386 U.S. 287, 87 S.Ct. 1065, 18 L.Ed.2d 53 (1967).

5.  T.D. 3101, 3 Cum.Bull. 191 (1920) amending Article 292 of Treasury Regulations 45, effective January 1, 1921, in permitting a deduction for the traveling expenses created the record-keeping difficulty by limiting the deduction to "meals and lodging in an amount in *excess* of any expenditures ordinarily required for such purposes when at home." Plaintiff's brief, (p. 10), correctly notes that "[t]his rule proved so difficult to administer that the Treasury Department asked Congress to grant a deduction for the 'entire amount' of such meal and lodging expenditures. Congress complied by enacting section 214(a) (1) of the Revenue Act of 1921, 42 Stat. 239, which authorized deduction of 'traveling expenses (including the *entire* amount expended for meals and lodging while away from home in pursuit of a trade or business * * *.'" [Emphasis of the words "excess" and "entire" supplied to indicate the force of the amendment.]

With the history of the provision to guide us, we, therefore, conclude that the IRS is justified in requiring of the taxpayer that he support his claim by showing that he has a sleep-in, eat-in home, on a year-round or at least permanent basis of expense to him while he incurs on his travel trips the duplicative temporary expense of food and lodging.[6]

See also, D.C., 270 F.Supp. 57.

Applying the principle to the instant facts, we find as the most significant circumstance the complete absence of any payments by the taxpayer whether year-round or partial to his brother for food and lodging at the brother's "home" which the plaintiff claims as his own.

The foregoing decision constitutes the findings of fact and the conclusions of law of the Court.

Complaint dismissed on the merits.

6. See James v. United States, 176 F.Supp. 270, 272 (D.Nev.1959), aff'd, 308 F.2d 204 (9th Cir. 1962), which, after the decision in Commissioner v. Stidger, 386 U.S. 287, 87 S.Ct. 1065, 18 L.Ed.2d 53 (1967), was modified in its holding by Wills v. Commissioner, 411 F.2d 537 (9th Cir. 1969), aff'g 48 T.C. 308 (1967). Wills did not, however, recede from the holding in the earlier James case that it was necessary that an abode be maintained by the taxpayer on a permanent basis to qualify him for the deduction.

See also Commissioner v. Mooneyhan, 404 F.2d 522, 527 (6th Cir. 1968), cert. denied, 394 U.S. 1001, 89 S.Ct. 1593, 22 L.Ed.2d 778 (1969); Scotten v. Commissioner, 391 F.2d 274 (5th Cir. 1968), aff'g 25 CCH Tax Ct.Mem. 1054 (1966); Cockrell v. Commissioner, 321 F.2d 504, 507 (8th Cir. 1963); Vincent P. McKilligan, 27 CCH Tax Ct.Mem. 1045 (1968); Kenneth H. Hicks v. Commissioner, 47 T.C. 71 (1966); Leo M. Verner, 39 T.C. 749 (1963).