### KENNETH H. HICKS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 534-64.   Filed October 19, 1966.

*Marvin L. Kieffer*, for the petitioner.
*Charles G. Barnett*, for the respondent.

#### OPINION

DAWSON, *Judge:* Respondent determined a deficiency in the petitioner's income tax for the year 1961 in the amount of $1,032.58. Petitioner claims an overpayment of $353.88.

Petitioner did not allege error in his petition as to respondent's adjustment of his deductible automobile expenses. Since petitioner agrees that the expense allowances paid to him by his employer are includable in gross income, only two issues are presented for decision:

(1) Is petitioner entitled to deduct, under section 162(a)(2) of the Internal Revenue Code of 1954, his traveling expenses for meals and lodging while away from Paragould, Ark., in pursuit of his business during the year 1961?

(2) Is petitioner entitled to deduct, as an ordinary and necessary business expense under section 162(a), transportation expense incurred in flying from a business assignment in Los Angeles to Memphis for a selective service physical examination?

All of the facts have been stipulated by the parties. The stipulation of facts and the exhibits attached thereto are incorporated herein and are adopted as our findings.

Kenneth H. Hicks (hereafter called petitioner) was, during 1961, a single person who filed his Federal income tax return for that year with the district director of internal revenue at Little Rock, Ark.

During 1961 the petitioner was employed by the James Co. of Hickory, N.C., at an annual salary of $4,155. In addition, the company's books and records show that in 1961 the petitioner was paid $5,184.20 based on the following expense allowance:

1. One week—January 1961—no expense allowance except payment for reimbursement of specific expenses incurred by Mr. Hicks in traveling to our company sales meeting in December 1960__ ............ $69.20
2. Forty-eight weeks at $105 per week expense allowance_____ ... 5,040.00
3. One-week expense allowance_____ ... 75.00
4. Two weeks of December 1961_____ ... No allowance

Total _____ 5,184.20

Petitioner's duties as an employee of the James Co. in 1961 consisted of contacting salesmen of other organizations which sold and distributed his employer's products. These duties required his extensive travel in the eastern and western parts of the United States. In 1961 the petitioner was physically present in Paragould, Ark., for approximately 2 weeks, in other Arkansas towns for approximately 4 weeks, in Hickory, N.C., at his employer's home office for approximately 1 week, and in other States the remainder of the year.

During 1961 petitioner maintained in Paragould, Ark., a permanent mailing address and bank account; he paid his automobile license and assessed his automobile for personal property tax purposes there; he reported to Paragould's local draft board; and he contributed $100 toward the expenses of his parents' residence there.

On his Federal income tax return for 1961 the petitioner deducted $1,907.84 as business expenditures in excess of his expense allowance of $5,184.20. His itemized business expenditures included meals, lodging, and tips totaling $4,380.45, all of which were disallowed as a deduction by the respondent in his notice of deficiency.

In 1961 the petitioner was required to interrupt his business travel while in Los Angeles, Calif., and proceed to Memphis, Tenn., to take a selective service physical examination ordered by his draft board. He traveled by air and claimed the transportation cost ($115.33) as a business expense. Respondent disallowed the deduction.

In order to qualify for a deduction under section 162(a)(2),[1] I.R.C. 1954, the petitioner must show (1) that his expenses were ordinary and necessary, (2) that the expenses were incurred while he was "away

---

[1] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

*     *     *     *     *     *     *

(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business ; and

from home," and (3) that he incurred the expenses in pursuit of his business. *Commissioner* v. *Flowers*, 326 U.S. 465 (1946); *Henry C. Deneke*, 42 T.C. 981 (1964). Respondent only challenges whether petitioner's expenses were incurred "while away from home" within the meaning of section 162(a)(2).

On these facts we hold that Paragould, Ark., was not the petitioner's home for Federal tax purposes. While it is true that he may have believed that Paragould was his home, retained some contacts there and made an effort to return whenever possible, this was only natural for a young man leaving his parents' residence and beginning work as a traveling salesman on his first full-time job. However, it is not sufficient to establish that Paragould was his "tax home" in 1961 for a section 162(a)(2) deduction.

This case is strikingly similar to *Wilson John Fisher*, 23 T.C. 218 (1954), affd. 230 F. 2d 79 (C.A. 7, 1956). In that case the taxpayer was a professional musician who was attempting to prove that Milwaukee, Wis., was his "tax home." He was raised in Milwaukee, voted, filed his tax returns, and procured his automobile license there. He spent several weekends with his mother-in-law at her Milwaukee apartment, used it as his mailing address, and returned there whenever possible. In addition, he contributed $5 a month toward the payment of his mother-in-law's telephone bill. On such facts, this Court held that the taxpayer did not establish that his mother-in-law's apartment was his home, and that while he was away from Milwaukee in the course of his employment he was not "away from home in the pursuit of his trade or business within the meaning of section 23(a)(1)(A) [the predecessor of section 162(a)(2)]." The same conclusion was reached in *James* v. *United States*, 308 F. 2d 204 (C.A. 9, 1962) (a traveling salesman); *Henry C. Deneke, supra* (a traveling salesman); *Moses Mitnick*, 13 T.C. 1 (1949) (the manager of traveling theatrical companies); and *Charles E. Duncan*, 17 B.T.A. 1088 (1929), affirmed per curiam 47 F. 2d 1082 (C.A. 2, 1931) (a traveling salesman). In each of these cases it was found that the taxpayer literally carried his home on his back.

Petitioner relies heavily on *Charles G. Gustafson*, 3 T.C. 998 (1944), acq. 1944 C.B. 12. The taxpayer in that case was unmarried and filed his income tax returns in Des Moines, Iowa. He was employed as national representative of the Dry Goods Journal which had its home office in Des Moines. He stayed with his sister in Greenville where he kept the things which he did not carry with him on his trips and to which he returned periodically for short weekends. He paid his own traveling expenses and in 1940 traveled the entire 52 weeks and spent $2,522 which the Commissioner disallowed. In holding that he was

entitled to deduct the entire amount spent for meals, lodging, and laundry while traveling, we said (pp. 999–1000) :

We think, however, that the evidence adequately shows that the petitioner, although traveling fifty-two weeks of the year, has his home with his sister in Iowa and that his "home office" is in Des Moines, to both of which he returns for home or business reasons, and that his traveling expenses are exactly within the statutory description. Such expenses of a man traveling in the pursuit of his business are of course living expenses, since they are paid for lodging and meals; but it cannot be supposed that the statute paradoxically allows the deduction of traveling expenses and at the same time prohibits the deduction because they are personal and living expenses. Eating and sleeping are as necessary and inevitable expenses of pursuing the business as is riding on trains, and it would be quite inconsistent to classify one among the allowable traveling expenses and the other among the nondeductible living expenses.

*       *       *       *       *       *       *

In the present case there were no home expenses, and therefore the traveling expenses were not in addition to his living expenses at home; but that gives no ground for substituting a hypothetical home living expense as a nondeductible amount and limiting the deduction to the artificial excess.

We acknowledge that the facts here are very close to those in *Gustafson*. However, a change in the judicial climate engendered by several recent decisions has sapped the *Gustafson* opinion of much, if not all, of its vitality. See *James* v. *United States, supra; United States* v. *Mathews*, 332 F. 2d 91 (C.A. 9, 1964) ; *Henry C. Deneke, supra;* and *Leo M. Verner*, 39 T.C. 749 (1963).[2] In the *Verner* opinion we said (p. 754) :

It is now axiomatic that the "away from home" provision of the statute is to mitigate the burden of the taxpayer forced by his business or employment to pay the expenses of maintaining two places of abode. The concept is well expressed by Judge Ross and in *James* v. *United States*, 176 F. Supp. 270, 272 (D. Nev. 1959) :

"No person is permitted to deduct living expenses generally, and ordinarily people are employed in the immediate vicinity of their home. However, there are certain employments which require the taxpayer to be and remain away from his home for extended intervals of time, during which period he is incurring additional and *duplicitous* expenses; that in order to equalize the burden between the "home" working person and the "away from home" working person an exemption should be granted as to the extent of travel expense, meals and lodging incurred by the "away from home" taxpayer to the extent that they are the ordinary and necessary expenses, incident to the "away from home" employment. [Emphasis supplied.]"

Consequently, in the circumstances we think the *Gustafson* opinion should not control the decision here. Surely, as Justice Cardozo once remarked, the courts have some responsibility to "gather up the driftwood and leave the waters pure."

Here the petitioner contributed only $100 toward the expenses of his parents' home. It is not clear from the stipulated facts whether the

---

[2] See also *Frederick A. Searles,* T.C. Memo. 1966–104, and *Frank D. Scotten,* T.C. Memo. 1966–206.

amount was to defray expenses incurred during the 2 weeks he stayed in Paragould or whether it represented small monthly payments. But, in either case, the petitioner did not have such substantial continuing and duplicitous expenses in Paragould to justify the allowance of a deduction for all food and lodging expenses while traveling.

Petitioner argues that, even if he cannot deduct the entire cost of his meals and lodging because he had no "tax home," he should be allowed to deduct that portion of the cost which is attributable to business exigencies. See *James* v. *United States, supra* at 208. But petitioner has not met his burden of allocating such costs between business and personal expenses. With the record barren of evidence on this point, the petitioner has not discharged his burden of proof, even if we assume the validity of his position.

With respect to the second issue, petitioner claims that the cost of air transportation from Los Angeles to Memphis to enable him to report for a selective service physical examination is deductible as an ordinary and necessary business expense since he was away from Paragould, which is near Memphis, on business at that time. Respondent contends that this is a personal, not business, expense and, therefore, is not deductible. We agree with respondent.

Section 454 of the Universal Military Training and Service Act of 1948 (50 U.S.C. App. sec. 454) requires a mental and physical examination of all male citizens between 18½ and 26 years of age who are registered under the Act. The petitioner had a personal duty imposed by law to report for a physical examination at such time and place as ordered by his local draft board. Any expense incurred in complying with the draft board's order was clearly personal. The mere fact that the petitioner was inconvenienced and had to pay the transportation cost out of his own pocket because his business required him to be elsewhere does not change the nature of the expenditure. Accordingly, we hold that the expense is personal and nondeductible under the provisions of section 262.

*Decision will be entered under Rule 50.*